O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIS LAMAR RIDGEWAY, on behalf of themselves and all others similarly situated,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br><br>SPOKEO, Inc.,<br><br>　　　　　　　Defendant. | Case No.:  2:23-cv-01660-MEMF-AS<br><br>**ORDER GRANTING DEFENDANT SPOKEO, INC.'S MOTION TO DISMISS AND GRANTING PLAINTIFF RIDGEWAY'S REQUEST FOR LEAVE TO AMEND [ECF NOS. 23, 34]** |

　　　Before the Court is the Motion to Dismiss filed by Defendant Spokeo, Inc. (ECF No. 23) and Plaintiff Willis Lamar Ridgeway's Response to the Court's Order to Show Cause on Subject Matter Jurisdiction (ECF No. 34). For the reasons stated herein, the Court hereby GRANTS the Motion to Dismiss and GRANTS Ridgeway leave to amend.

/ / /

/ / /

1

## I. Background

### A. Factual Background[1]

Defendant Spokeo, Inc. ("Spokeo") operates a people search engine, spokeo.com, which offers to display detailed reports about individuals to any user who pays a monthly subscription fee. Compl. ¶ 2. Spokeo compiles information from thousands of data sources and uses it to create profiles on Alabama residents which it hosts on its database. *Id.* ¶ 3. A user of Spokeo's site can subscribe to its database by paying a monthly fee of $24.95, which grants the subscriber unlimited access to detailed records pertaining to any individual for which Spokeo has information. *Id.* ¶ 4.

When a user of the site who is not a subscriber searches for an individual on the site, Spokeo generates and then presents to the user a "teaser report" containing limited information about the individual, and—adjacent to the teaser—offers to provide access to the full database in exchange for the purchase of a monthly subscription.[2] *Id.* ¶¶ 6–9. Spokeo does not use the teaser report to sell a full report on the searched individual, but to sell a subscription to its database services. *Id.* ¶ 9.

Plaintiff Willis Lamar Ridgeway ("Ridgeway") is an Alabama resident who never consented to Spokeo's use of any indicia of his identity. *Id.* ¶ 11, 14. Ridgeway brings this lawsuit on behalf of himself and "all Alabama residents whose indicia of identity was published by Spokeo without their consent." *Id.* ¶ 53.

### B. Procedural History

On March 6, 2023, Ridgeway filed the Complaint in this Court as a class action against Spokeo "for violating the rights of Alabama citizens by using their names, signatures, photographs, images, likenesses, voices, and or similar imitations of those attributes *for the commercial purpose of advertising subscriptions to Defendant's database services* without obtaining consent from Plaintiff or the putative class." *Id.* ¶ 1 (emphasis added). The Complaint asserts two causes of action:

---

[1] All facts stated herein are taken from the allegations in Plaintiff's Complaint unless otherwise indicated. ECF No. 1 ("Compl."). For the purposes of this Motion, the Court treats these factual allegations as true, but at this stage of the litigation, the Court makes no finding on the truth of these allegations and is therefore not—at this stage—finding that they *are* true.

[2] At the hearing on this matter, the parties made clear that the teaser report is *generated* upon a search for a name.

(1) for violation of Alabama Code 1975 § 6-5-772, otherwise known as Alabama's Right of Publicity Act ("AROPA"); and (2) unjust enrichment.

On May 12, 2023, Spokeo filed this Motion to Dismiss (the "Motion"). ECF No. 23 ("Mot."). On June 2, 2023, Ridgeway filed his opposition to the Motion. ECF No. 29 ("Opp."). On June 16, 2023, Spokeo filed its reply. ECF No. 30 ("Reply"). On July 26, 2023, Spokeo filed a notice of supplemental authority in support of its Motion. ECF No. 32. On August 7, 2023, Ridgeway filed an opposition to Spokeo's notice. ECF No. 33. On September 25, 2023, despite its opposition to Spokeo's, Ridgeway filed his own notice of supplemental authority. ECF No. 38.

On July 26, 2023, this Court issued an order to show cause as to why the action should not be dismissed for lack of subject matter jurisdiction on the basis that Ridgeway's Complaint did not appear to meet the class size nor amount-in-controversy requirements to establish jurisdiction for a class action lawsuit. ECF No. 31 ("OSC"). On August 9, 2023, Ridgeway responded to the Court's OSC arguing that the Complaint satisfied the Class Action Fairness Act ("CAFA") and was sufficient to establish subject matter jurisdiction, but alternatively requested leave to amend his Complaint. ECF No. 34 ("OSC Response"). On August 16, 2023, Spokeo filed a reply to Ridgeway's OSC Response. ECF No. 35. On August 28, 2023, Ridgeway filed a response replying to Spokeo's reply. ECF No. 37.

The two matters were heard before the Court on September 28, 2023.

## II. Applicable Law

Spokeo brings its Motion under Federal Rules of Civil Procedure 12(b)(1) for lack of standing and 12(b)(6) for failure to state a claim.

### A. Rule 12(b)(1): Lack of Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction," and can only hear cases where there is a valid basis for federal jurisdiction. *Richardson v. United States*, 943 F.2d 1107, 1112 (9th Cir. 1991). Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") authorizes a party to seek dismissal of an action for lack of subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). In the context of a 12(b)(1) motion, the plaintiff bears the burden of establishing subject matter jurisdiction. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

### i. Standing

Federal subject matter jurisdiction requires that the plaintiff have standing. A plaintiff will lack standing unless the plaintiff: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

To establish an injury in fact, a plaintiff must have a "personal stake" in the matter. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). At an "irreducible minimum, the plaintiff must show that they personally suffered actual or threatened injury as a result of the defendant's conduct." *Id.* An alleged statutory violation is insufficient to confer standing on its own. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) (rejecting the proposition that "a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right"). Rather, "courts should assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *Id.* "That inquiry asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *Id.* (identifying intangible harms to include reputational harms, disclosure of private information, and intrusion upon seclusion).

"Because standing and ripeness pertain to federal courts' subject matter jurisdiction, they are properly raised in a Rule 12(b)(1) motion to dismiss." *Chandler*, 598 F.3d at 1122. In the context of a 12(b)(1) motion, the plaintiff bears the burden of establishing Article III standing to assert the claims. *Id.*

### ii. The Class Action Fairness Act

Once standing has been established, a plaintiff must assert a possible basis for jurisdiction. The only basis relevant to this matter is jurisdiction under the Class Action Fairness Act ("CAFA") pursuant to 28 U.S.C. § 1332(d). In order for the Court to have subject matter jurisdiction under CAFA, there must be: (1) minimal diversity, which is met when any member of the class is a citizen of a different state than any defendant; (2) 100 or more putative class members; and (3) more than $5 million in controversy. *See Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1195 (9th Cir.

2015). In determining the amount in controversy, the Court must first look to the complaint, and "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *Id.* at 1197 (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283 (1938)). If the amount in controversy is in dispute, "CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Id.* at 1198.

### B. Leave to Amend

As a general rule, leave to amend a dismissed complaint should be freely granted unless it is clear the complaint could not be saved by any amendment. Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

## III. Discussion

Spokeo sets forth three main arguments on its Motion: (1) Ridgeway lacks standing, (2) Ridgeway's claims are deficient, and (3) Ridgeway's claims are barred by federal law. *See generally* Motion. The Court has also independently raised an additional issue not raised in Spokeo's Motion—namely, the issue of whether Ridgeway has satisfied the CAFA requirements to establish subject matter jurisdiction. ECF No. 31.

The primary dispute between the parties at this stage—with respect to standing and subject matter jurisdiction—is whether Ridgeway must allege that anyone searched for or viewed his teaser report in order for the Complaint to survive. For the reasons explained below, the Court finds that the answer to this question is yes. Accordingly, the Court finds that Ridgeway has not alleged sufficient facts to confer standing or subject matter jurisdiction. However, given that there is a possibility for Ridgeway to cure the deficiencies in the Complaint, the Court will grant Ridgeway leave to amend.

### A. Ridgeway's Allegations

Ridgeway alleges that Spokeo violated Alabama's Right of Publicity Act ("AROPA") and was unjustly enriched in doing so. The text of AROPA reads as follows:

> Except as otherwise provided in this article, any person or entity who *uses* or *causes the use of* the indicia of identity of a person, on or in products, goods, merchandise, or services entered into commerce in this state, or *for purposes of advertising* or selling,

> or soliciting purchases of, products, goods, merchandise, or services, or for purposes of fund-raising or solicitation of donations, or for false endorsement, without consent shall be liable under this article to that person, or to a holder of that person's rights.

Code of Ala. § 6-5-772 (emphasis added). At the hearing on this matter, counsel for Ridgeway confirmed that Ridgeway's claim is based solely on Spokeo's alleged "use" of his information in the teaser report "for purposes of advertising," not any of the other potential uses set forth in the statute. According to Ridgeway,

> Spokeo's website design operates in such a manner that violates the right of publicity of Plaintiff and other Alabama citizens because *it displays indicia of their identities adjacent to an offer to provide access to its database in exchange for payment* of a monthly subscription fee (and, in fact, Spokeo displays indicia of Plaintiff's identity to persuade the user to purchase a subscription).

Compl. ¶ 34 (emphasis added). In addition, he alleges:

> Defendant *used* Plaintiff's name, image, and likeness *to advertise* its products – *teasing potential subscribers with Plaintiff's indicia of identity to pique the interest of potential subscribers* as it relates to the information they could obtain by subscribing to Defendant's database.

Compl. ¶ 44 (emphasis added).

### B. Ridgeway Has Not Established Standing

Spokeo makes two main contentions with respect to standing, namely that Ridgeway has failed to set forth allegations sufficient to establish standing because, *first*, he has not alleged that anyone actually searched for or viewed his teaser report, and, *second*, even if he had, he has not alleged any concrete injury. Mot. at 4, 6. Both of these contentions go towards the first requirement of Article III standing—whether Ridgeway has suffered an injury in fact. Ridgeway contends that it is not necessary to allege that anyone searched for or viewed his teaser report in order for him to show standing and it is not necessary that anyone actually did search for or view his teaser report in order for him to recover. The Court finds that Ridgeway has not sufficiently pleaded an injury in fact to confer Article III standing because he has not alleged that anyone actually searched for or viewed his teaser report. The Court therefore need not reach the question of whether—had he alleged that anyone searched for or viewed his teaser report—this would constitute a *concrete* injury.

Ridgeway argues that he has properly pleaded an injury in fact—namely, the violation of AROPA as well as various economic injuries from the use of his indicia of identity. Opp. at 4. As set

forth in the Complaint, Ridgeway alleges that Spokeo injured Ridgeway "by taking and misappropriating his indicia of identity without obtaining his consent to use his likeness for a commercial purpose." Compl. ¶ 51. But this is merely a restatement of the AROPA statute itself. *See* Ala. Code 1975 § 6-5-772. The Supreme Court has already held that merely pleading a statutory violation is not enough—on its own—to plead an *injury* and therefore establish standing. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) (rejecting the proposition that "a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right").

Here, the forms of injury Ridgeway points to are conjectural and hypothetical. *See Lujan*, 504 U.S. at 560 (explaining that an injury in fact requires injury that is "actual or imminent, not 'conjectural or hypothetical'"). The fact that Ridgeway's teaser report may have been available or accessible, standing alone, does not lead to any actual or imminent harm. Ridgeway makes the conclusory assertion that Spokeo "***used*** [his] name, image, and likeness to advertise its products—teasing potential subscribers with Plaintiff's indicia of identity to pique the interest of potential subscribers as it relates to the information they could obtain by subscribing to [Spokeo's] database." Compl. ¶ 44 (emphasis added). But he fails to assert that this actually happened—namely that anyone searched for or viewed his teaser report and was therefore "teased with his identity." To the contrary, Ridgeway's position is that he does not need to so allege. *See* Opp. at 7.

The plain meaning of the word "use" is to put to use as a resource or to employ for the accomplishment of a purpose.[3] Ridgeway has not pointed this Court to any authority that supports

---

[3] Dictionary.com defines the verb use as "to employ for some purpose; put into service; make use of . . . to avail oneself of; apply to one's own purposes." *Use*, DICTIONARY.COM, https://perma.cc/HR8U-8CT8 (last visited Sept. 27, 2023).

Similarly, Black's Law Dictionary defines "use" as follows:

> **1.** *To employ for the accomplishment of a purpose; to avail oneself of* <they use formbooks>. **2.** To put into practice or employ habitually or as a usual way of doing something; to follow as a regular custom <to use diligence in research>. **3.** To do something customarily or habitually; to be wont or accustomed <I used to avoid public speaking, but no longer>. **4.** *Archaic.* To conduct oneself toward; to treat <he uses me well>. **5.** To make familiar by habit or practice; to habituate or inure <she is used to the pressure>. **6.** To take

the notion that one could be liable for a hypothetical "advertisement" that no third party ever sees.[4]

At oral argument, Ridgeway argued that for harm caused by advertisements on a billboard or put in a news stand, a party does not have to necessarily allege that such advertisements were seen, as it is assumed. However, the Court finds the advertisement here more akin to a flyer that is only handed out to people who attend a specific event. There can be no injury if there is no allegation that anyone attended the event, and therefore no flyers were handed out.

Ridgeway relies heavily on the definition of "published" employed by the Ninth Circuit in *Oja v. United States Army Corps of Eng'rs*, 440 F.3d 1122 (9th Cir. 2006):

> Internet publication is a form of "aggregate communication" in that it is intended for a broad, public audience, similar to print media. In both print and Internet publishing, information is generally considered "published" when it is made available to the public. Once information has been published on a website or print media, there is no further act required by the publisher to make the information available to the public.

*Oja*, 440 F.3d at 1131. According to Ridgeway, it is therefore appropriate to consider the teaser report "published" and his personal information "used" in the meaning of the statute, because there is no "additional act" needed by Spokeo to make the teaser report available to a user who searches for an individual name. But even to the extent that this definition of "published" is controlling, the teaser report is still not "published" until a user searches for an individual.  The parties themselves agreed that the teaser profile *does not even exist* until someone searches for a given individual—at

---

(an amount of something) from a supply <the firm uses 50 reams of paper each day>. **7.** To take advantage of (someone) for selfish purposes; to make (a person) an involuntary means to one's own ends <he uses his interns for personal errands>. **8.** To take usu. improper advantage of (a situation, position, etc.) <she uses her board membership to threaten staffers>. **9.** To regularly take; to partake of (drugs, tobacco, etc.) <he uses heroin>.

*Use*, BLACK'S LAW DICTIONARY (11th ed. 2019) (emphasis added).

[4] The Court also notes that AROPA is Alabama's "Right of Publicity Act," and the right of publicity typically requires use in the nature of some form of publication. *See* STUART M. SPEISER ET AL., 9 AMERICAN LAW OF TORTS § 30:39 (explaining that the right of publicity was first recognized in a case where the court found that "a man has a right in the publicity value of his photograph, i.e., the right to grant the exclusive privilege of *publishing* his picture") (emphasis added).

which point it is generated and presented.[5] It does not merely sit on the internet as a webpage waiting to be accessed, but requires someone specifically interested in Ridgeway's information to seek it and Spokeo to respond to that request by generating and presenting the teaser report. This is what differentiates it from other information "published" on the internet. Accordingly, the Court finds that an allegation that someone did search for Ridgeway's information and generate a corresponding teaser report would be required to have his identity be considered "used," which is in turn necessary for resulting injury. Spokeo could not have caused Ridgeway's indicia of identity to be used, much less used to sell its products or services, if no one has actually searched for Ridgeway's profile, and therefore his teaser report has never been generated nor seen by anyone.

The Court finds the Supreme Court's analysis in *TransUnion* particularly instructive. In *TransUnion*, a class of plaintiffs sued a credit reporting agency for violating the provisions of the Fair Credit Reporting Act concerning accuracy of credit files. 141 S. Ct. at 2200. While it was undisputed that every plaintiff's credit file indeed had misleading information, it was also undisputed that only some of the plaintiffs had their credit files disclosed to third parties. 141 S. Ct. at 2197. As the Supreme Court explained, "the mere presence" of misleading information, "if it is not disclosed to a third party, causes no concrete harm." *Id.* at 2210. Similarly, the mere presence of misleading information without disclosure caused no sufficient risk of future harm and they did not show any harm from being exposed to the risk (such as emotional injury from the mere risk that their information might be provided to others). *Id.* at 2211. In fact, any risk of future harm was speculative in light of the failure to demonstrate the likelihood of disclosure or even that they even knew the misleading information was in their files. *Id.* at 2212 (noting that for this class of plaintiffs, "the risk of dissemination to third parties [is] too speculative to support Article III standing"). Accordingly, those plaintiffs who could not show that their inaccurate credit files had been disclosed to any third party did not have standing. *Id.* at 2209–13. Ridgeway's purported harm is akin to that of the plaintiffs in *TransUnion* for whom standing was found wanting.

---

[5] The Court acknowledges that there are screenshots of Ridgeway's profile in the Complaint, but there are no allegations that these screenshots came from someone other than Ridgeway himself or his counsel. *See* Compl. ¶¶ 28, 32, 34.

The *TransUnion* plaintiffs also brought a claim that certain mailings to the plaintiffs were formatted incorrectly, but again, the Supreme Court found that "[w]ithout any evidence of *harm* caused by the format of the mailings, these are '*bare procedural violation[s]*, divorced from any concrete harm'" which was insufficient for standing. *Id.* at 2213 (emphasis added). Similarly, Ridgeway has not pointed to any concrete harm or a sufficiently significant risk of future harm beyond the alleged procedural violation.

And, finally, the Court does not find—as it must—that the mere availability or accessibility of Ridgeway's teaser report is a harm closely related to any right protected by common law. *See TransUnion LLC*, 141 S. Ct. at 2211 (holding that "mere risk of future harm, standing alone, cannot qualify as a concrete harm—at least unless the exposure to the risk of future harm itself causes a *separate* concrete harm"). Although Ridgeway argues that AROPA has codified the "common law tort of misappropriation," and that "violations of AROPA simply do not require" actual disclosure to anyone, importantly, he fails to demonstrate that the common law tort of misappropriation would not require some sort of *disclosure* to show either use or harm.[6] Opp at. 7; *see Slivinsky v. Watkins-Johnson Co.*, 221 Cal. App. 3d 799, 807 ("*Resulting* injury is the sine qua non of a cause of action for misappropriation of name.") (emphasis added).

For these reasons, the Court finds that Ridgeway's Complaint must be dismissed because he fails to establish standing.[7] Nevertheless, because the Court finds that it may be possible for Ridgeway to cure this deficiency, Spokeo's Motion is GRANTED WITH LEAVE TO AMEND.

---

[6] The Court notes that *In re Facebook*, 956 F.3d 589, 599 (9th Cir. 2020) makes clear that "'state law can create interests that support standing in federal courts.'" (quoting *Cantrell v. City of Long Beach*, 241 F.3d 674, 684 (9th Cir. 2001)). The Ninth Circuit therefore undertook this same analysis when analyzing California causes of action. *In re Facebook*, 956 F.3d at 598 ("As to the statutory claims, the legislative history and statutory text demonstrate that Congress and the California legislature intended to protect these historical privacy rights when they passed the Wiretap Act, SCA, and CIPA.").

[7] Ridgeway relies heavily on non-binding authority in *Kellman v. Spokeo* throughout his opposition, but there, the adequacy of allegations supporting that the plaintiffs' profiles had actually been searched were not at issue. 599 F. Supp. 3d 877 (N.D. Cal. 2022). As *Kellman* never considered standing on the lack of an alleged injury altogether, the case is distinguishable.

The Court also notes that after the hearing, the 9th Circuit issued a decision in *Martinez v. ZoomInfo Technologies, Inc.*, 2023 WL 6153577, __F.4th __ (9th Cir. 2023), which affirmed a district court's denial of

      **C.**      **Ridgeway Has Not Satisfied the Requirements of CAFA**

In addition, and as a further basis for granting the Motion in light of the Court's ruling on standing, the Court finds that it lacks subject matter jurisdiction because the allegations as pleaded in the Complaint are insufficient to satisfy CAFA requirements.

Under CAFA, there must be at least 100 putative class members and more than $5 million in controversy for this Court to have original jurisdiction. 28 U.S.C. §§ 1332(d)(2) & (d)(5)(b). Here, Ridgeway seeks $5,000 per violation of AROPA, so presumably the class needs more than 1,000 individuals to satisfy the amount in controversy requirement. *See* Compl. ¶ 76(f). Although the Complaint purports to include in its putative class "All Alabama residents whose indicia of identity was published by Spokeo without their consent," the Court cannot draw a reasonable inference of how many Alabama residents are included in this class definition. Compl. ¶ 53. While Ridgeway points to its allegations that Spokeo offers full reports on "millions of individuals," it is not clear how many of them are from Alabama, nor how many individuals have their information "used" in violation of AROPA. Compl. ¶ 9. More significantly, the Court has determined that not all of these individuals would have standing—for the reasons discussed above, only individuals whose profiles were searched for or viewed would have standing, which may significantly narrow the class. While Ridgeway's proposed amendments—regarding the number of class members and the amount of damages—would not cure the standing issue problem identified above, the Court nevertheless finds

---

an anti-SLAPP motion to strike on a complaint that brought causes of action related to California's right of publicity statute on a website that similarly creates teaser reports off users. The Ninth Circuit in *Martinez* held that the plaintiff there had "plausibly pleaded that she suffered sufficient injury to establish standing to sue" such that the court could consider the appeal. *Id.* at *4. Although the Ninth Circuit did not identify what was significant to its standing analysis in the decision, the complaint in *Martinez* contained allegations that the plaintiff suffered mental injury and disturbance in her peace of mind, which is not alleged here. Complaint at ¶44, *Martinez v. ZoomInfo Technologies, Inc.*, Case No. 3:21-cv-05725-MJP (W.D. Wash. Sept. 30, 2021), ECF No. 1. (These allegations—and the fact that the district court found that the requisite allegations of third-party viewership *were* made—also distinguish Plaintiff's Supplemental Authority, ECF No. 38, *Nolen v. PeopleConnect, Inc.*, Case No. 20-cv-09203-EMC (N.D. Cal. June 30, 2023), from the current case.) Moreover, the threshold issue of whether the defendant's actions specifically as to the teaser report could constitute a "use" was apparently not argued in *Martinez*. Order on Motion to Dismiss at 7-10, *Martinez v. ZoomInfo Technologies, Inc.*, Case No. 3:21-cv-05725-MJP (W.D. Wash. Apr. 11, 2022), ECF No. 39.

that Ridgeway could potentially add allegations addressing the number of individuals whose profiles were searched and viewed and thereby meet the requirements of CAFA.

Accordingly, the Complaint is DISMISSED on this ground WITH LEAVE TO AMEND.

**D.     The Remaining Arguments are Moot**

Because the Court finds that Ridgeway must plead that someone actually searched for and viewed his teaser report in order to establish standing and demonstrate subject matter jurisdiction, the Court need not reach Spokeo's other asserted bases for dismissing Ridgeway's Complaint.

**IV.    Conclusion**

For the foregoing reasons, the Court hereby ORDERS as follows:

1. Spokeo's Motion to Dismiss is GRANTED WITH LEAVE TO AMEND; and
2. If Ridgeway wishes to amend his Complaint to address the deficiencies identified, he is ORDERED to do so within 30 days from the date of this Order.

IT IS SO ORDERED.

Dated: October 11, 2023

MAAME EWUSI-MENSAH FRIMPONG
United States District Judge